2006 ME 32

Patricia BRAWN et al.

v.

ORAL SURGERY ASSOCIATES, P.A. et al.

Supreme Judicial Court of Maine.

Argued: Jan. 23, 2006.
Decided: March 30, 2006.

Philip P. Mancini, Esq. (orally), Drummond & Drummond, LLP, Portland, for plaintiffs.

Craig A. Fontaine, Esq. (orally), Cramer, Alissi & Fontaine, P.C., Hartford, CT, James E. Belleau, Esq., Skelton, Taintor & Abbott, Auburn, for defendants.

Panel: SAUFLEY, C.J., and, DANA, CALKINS, LEVY, and SILVER, JJ.

CALKINS, J.

[¶ 1] This appeal is the latest phase in the litigation initiated by former patients against the oral surgeons who inserted Vitek implants in the patients' temporomandibular joints to relieve malfunctions.[1] Kahla Gerard, Mary Shane, and Joline York appeal from the summary judgment against them and in favor of Oral Surgery Associates, P.A., and the individual oral surgeons,[2] entered in the Superior Court

---

1. Our previous opinions in this case are: *Brawn v. Oral Surgery Associates*, 2003 ME 11, 819 A.2d 1014; *Dutil v. Burns*, 1997 ME 1, 687 A.2d 639; and *Dutil v. Burns*, 674 A.2d 910 (Me.1996).

2. The individual surgeons are Lewis N. Estabrooks, D.M.D., Carlton E. Fairbanks, D.M.D., Russell J. Collett, D.D.S., and David J. Moyer, D.D.S., M.D. The professional association and the individual surgeons are here-

(Cumberland County, *Delahanty, J.*). Lynette Thompson appeals from the same summary judgment, which was against her and in favor of G.P. Raynald Roy, D.D.S., and his professional association. These patients contend that the Superior Court misinterpreted our 2003 decision in this case, *Brawn v. Oral Surgery Associates*, 2003 ME 11, 819 A.2d 1014 (*Brawn I* ), when it held that they have no viable claims against the oral surgeons. We disagree with their contention, and we affirm the judgment.

[¶ 2] Patricia Brawn, Vicki Fortier, Paul Molnar, Arline Trenholm, and Susan Weir appeal from an entry of judgment against them and in favor of OSA, entered in the Superior Court (*Fritzsche, J.*). Robin Dutil and Sandra Ellis appeal from the same judgment, which was against them and in favor of John Burns, D.D.S. These seven patients contend that *Brawn I* held that they have viable claims against the oral surgeons and that the Superior Court misinterpreted *Brawn I* in granting judgment to the surgeons on remand. We affirm the judgment.

## I. BACKGROUND

[¶ 3] The history of this protracted litigation is briefly described in *Brawn I*. In four separate actions, twenty-five former patients sued the oral surgeons who surgically implanted the Vitek devices, and their spouses joined with loss of consortium claims. Only eleven of the patients are parties to this appeal. The surgeries for these eleven patients were performed in the mid–1980s, but their notices of claim were not filed earlier than 1993. Because the patients' claims are for professional negligence, they come within the Health Security Act (HSA) and its three-year statute of limitations. 24 M.R.S. § 2902

(2005). Thus, a primary dispute between the parties concerns when the cause of action arose.

[¶ 4] As the health risks associated with the Vitek implants became recognized, in December 1990, the federal Food and Drug Administration distributed an "FDA Safety Alert" addressed to all oral and maxillofacial surgeons, warning of the dangers of the implants, recalling all unused Vitek implants, and recommending that all patients with the implants be evaluated, treated, and monitored. All of the patients in this appeal allege that they suffered from symptoms associated with the implants and mental distress from not being given information regarding the implants. These patients all eventually learned of the dangers of the implants either from receiving the FDA warning or from other sources, including from the oral surgeons. These patients allege that the oral surgeons downplayed or minimized their concerns and symptoms even after the FDA warning. The implants of all eleven patients in this appeal, with the exception of Weir, were removed between 1986 and 1995. These patients all filed notices of claim between 1993 and 1998 and, with the exception of Brawn, none of the patients whose implants were removed filed a notice of claim within three years of the implant removal.

[¶ 5] Of the eleven patients in this appeal, all but Thompson were also appellants in *Brawn I*. That case concerned two summary judgments that were entered by the court (*Delahanty, J.*) against the patients who sued OSA and Burns. Thompson was not covered by either summary judgment because the motions had not included her. This appeal concerns two

inafter referred to jointly as "OSA." References herein to "surgeons" also refer to the

professional associations involved in this litigation.

judgments that were entered following remand in *Brawn I*.

[¶ 6] The summary judgment that was the primary subject of discussion in *Brawn I* was filed in April 2000 and was brought by OSA against the OSA patients on the patients' fraudulent concealment claim. The patients had claimed that the surgeons fraudulently concealed their causes of action, and, therefore, they were entitled to rely on the six-year statute of limitations, 14 M.R.S. § 859 (2005), instead of the three-year HSA statute of limitations. By order dated June 20, 2001, the court granted the motion and entered judgment on all of the patients' claims even though OSA had moved for summary judgment only on the fraudulent concealment claim. Because this summary judgment reached more than the fraudulent concealment claim, we discussed the remaining claims the patients had brought, and we placed them into five categories. *Brawn I*, 2003 ME 11, ¶ 19, 819 A.2d at 1025. We agreed with the Superior Court that summary judgment was properly granted against the patients in all categories of claims except Category E, which we described as follows: "[A] breach of the duty to adequately advise the patient as to the risks to his/her health of leaving the implants in place during the period after the operation and within three years of the filing of the notice of claim." [3] *Id.* We affirmed the June 20, 2001, summary judgment on all claims except those in Category E, and we remanded the matter for further proceedings. *Id.* ¶ 36, 819 A.2d at 1029. Thus, the only remaining issue for the patients

was whether they had viable Category E claims.

[¶ 7] Following further discovery after *Brawn I*, the surgeons filed new motions for summary judgment against Gerard, Shane, York, and Thompson.[4] In a decision dated May 27, 2004, the court granted summary judgment in favor of the surgeons on the basis that the patients' claims were barred by the statute of limitations because they waited more than three years after their implants were removed to file notices of claim. The court reasoned that the surgeons did not have a duty to advise the patients of the health risks of leaving the implants in place once the implants had been removed. Therefore, the statute of limitations began to run, at the latest, on the date the implants were removed. Because these four patients filed their notices of claim more than three years after having the implants removed, any claim for failing to warn them of the risk of leaving the implants in place was barred.

[¶ 8] The other summary judgment motion that was discussed in *Brawn I* was filed in January 2000 and involved seven patients: Brawn, Dutil, Ellis, Fortier, Molnar, Trenholm, and Weir, hereinafter referred to as the "seven patients." By an order dated June 21, 2001, the court granted summary judgment to the respective surgeons because the seven patients "all learned of the dangers to their health more than three years before their notices of claim," and their " 'breach of the duty to warn' " claims were therefore no longer viable. *Id.* ¶ 3, 819 A.2d at 1018–19. We neither expressly affirmed nor vacated the June 21, 2001, summary judgment. Thus,

---

3. We did hold, however, that because they presented evidence of fraudulent concealment within three years of their surgeries, summary judgment was not proper against two patients, who are not parties to this appeal, on their Category B and C claims. *Brawn I*, 2003 ME 11, ¶¶ 26, 28, 819 A.2d at 1026–27.

4. Motions were also filed against other patients and spouses, but only Gerard, Shane, Thompson, and York have appealed.

on remand, the seven patients and the surgeons disagreed as to whether the seven patients were still in the case and entitled to argue that they had Category E claims, or whether the summary judgment against them on all of their claims had been affirmed. After receiving legal memoranda from the parties, the court issued a decision, dated September 15, 2004, interpreting *Brawn I* as having affirmed the summary judgment, and it granted judgment to the respective surgeons of the seven patients.

[¶ 9] The court (*Fritzsche, J.*) certified both summary judgments as final judgments pursuant to M.R. Civ. P. 54(b)(1), and the eleven patients have appealed both judgments.

## II. DISCUSSION

### A. Standard of Review

■ [¶ 10] We review a summary judgment ruling de novo, "viewing the evidence in the light most favorable to the nonmoving party, to decide whether the parties' statements of material fact and referenced record evidence reveal a genuine issue of material fact." *Rice v. City of Biddeford*, 2004 ME 128, ¶ 9, 861 A.2d 668, 670. We vacate a grant of summary judgment if there is a genuine issue of material fact or if the court committed a legal error. *Brawn I*, 2003 ME 11, ¶ 15, 819 A.2d at 1022–23. When the plaintiff fails to set forth facts showing that there is a genuine issue for trial on a statute of limitations defense, summary judgment may be granted on the ground that the applicable statute of limitations has run. *See* M.R. Civ. P. 56(e); *Dugan v. Martel*, 588 A.2d 744, 747 (Me.1991).

### B. Judgment Against Gerard, Shane, Thompson, and York

■ [¶ 11] An oral surgeon has "a duty to warn a patient of learned dangers of implanted devices." *Brawn I*, 2003 ME 11, ¶ 17, 819 A.2d at 1023 (citing *Welch v. McCarthy*, 677 A.2d 1066, 1069 (Me.1996)). There is no duty to warn of obvious dangers. *See Lorfano v. Dura Stone Steps, Inc.*, 569 A.2d 195, 197 (Me.1990). Therefore, once a patient discovers the risks associated with the implants, the surgeon's duty to warn expires, and any notice of claim filed beyond the applicable statute of limitations is barred. *Brawn I*, 2003 ME 11, ¶ 29, 819 A.2d at 1027. The applicable statute of limitations is 24 M.R.S. § 2902, which states: "Actions for professional negligence shall be commenced within 3 years after the cause of action accrues. For the purposes of this section, a cause of action accrues on the date of the act or omission giving rise to the injury."

■ [¶ 12] The only remaining cause of action left to these four patients after *Brawn I* is that described as a Category E claim: "a breach of the duty to adequately advise the patient as to the risks to his/her health of leaving the implants in place." 2003 ME 11, ¶ 19, 819 A.2d at 1025. Regardless of when that cause of action accrued, there was no longer a cause of action once the patient knew about the dangers of leaving the implants in place. This is precisely what we stated in *Brawn I*: "[T]he defendants' duty to warn expired when these plaintiffs became aware of the problem." *Id.* ¶ 29, 819 A.2d at 1027.

[¶ 13] Gerard, Shane, Thompson, and York all became aware of the risks of leaving their implants in place at some point prior to having them removed. The court did not have to determine the exact date that these patients learned of the danger of leaving the implants in place because these patients all had their implants removed, and they waited more than three years after the removals to file notices of their claims. Gerard's implants

were removed on June 17, 1992. She filed her notice of claim on June 19, 1995. Shane's implants were removed in October 1994, and she filed her notice of claim in December 1997. Thompson's implants were removed in 1987, but she did not file a notice of claim until 1995. York's implants were removed in February 1993, and she filed her notice of claim in December 1997. The Superior Court did not err in concluding that the duty to warn claims of Gerard, Shane, Thompson, and York are barred by the statute of limitations.

[¶ 14] *Brawn I* disposed of any other claims that Gerard, Shane, and York may have had against the surgeons.[5] Therefore, the granting of the summary judgment motion against Gerard, Shane, and York was not in error.

[¶ 15] Thompson, who was not a party in *Brawn I*, does not argue that she has any claim other than a Category E claim that remains viable under the reasoning of *Brawn I*. As to her Category E claim, she is in the same position as Gerard, Shane, and York with regard to the surgeons' duty to warn about the dangers of leaving the implants in place. Thus, the grant of summary judgment against her was also appropriate.

C. Judgment Against Brawn, Dutil, Ellis, Fortier, Molnar, Trenholm, and Weir

[¶ 16] As noted above, *Brawn I* did not expressly affirm the June 21, 2001, summary judgment against Brawn, Dutil, Ellis, Fortier, Molnar, Trenholm, and Weir. They all contend that they have viable Category E claims and that the Superior Court erred in ruling that we affirmed the June 21, 2001, summary judgment, which found against them on all of their claims.

[¶ 17] *Brawn I* affirmed the June 21, 2001, summary judgment when it stated that the seven patients "learned of the risks associated with their implants more than three years before they filed their notices of claim," and that the court correctly concluded that their "breach of the duty to warn" claims were no longer viable. 2003 ME 11, ¶ 29, 819 A.2d at 1027. As we pointed out in the discussion above regarding the Category E claims of Gerard, Shane, Thompson, and York, the duty to warn expires when the patient learns of the defects. Just as the surgeons' duty to warn Gerard, Shane, Thompson, and York expired when they had the implants removed, if not earlier, the same is true for the seven patients.

[¶ 18] Dutil had her implants removed in March 1992, but she did not file her notice of claim until July 1995. Ellis had her implants partially removed in 1986, and the remainder removed in 1992, but she did not file her notice of claim until July 1995. Fortier's implants were removed in 1989, and her notice of claim was filed in 1995. Molnar had his implants removed in 1992, but he filed his notice of claim in 1998. Trenholm's implants were removed in 1986, but her notice of claim was filed in 1993. It is readily apparent that more than three years transpired between the removal of the implants and the filing of notices of claim by Dutil, Ellis, Fortier, Molnar, and Trenholm.

[¶ 19] The situations of Brawn and Weir are slightly different from the other patients. Brawn's implants were removed on October 2, 1995, and she filed her notice of claim within three years of the removal, on August 20, 1998. However, in her statement of material facts she states that she

---

**5.** Gerard argues that she still has a viable Category C claim. We stated in *Brawn I* that the court properly entered judgment against all of the patients' Category C claims (except for two patients who are not involved in this appeal), 2003 ME 11, ¶ 28, 819 A.2d at 1027, and Gerard fails to explain why that statement is not applicable to her.

learned of the potential problems associated with the implants in May 1993. Thus, she waited more than three years after learning of the dangers of the implants before filing notice of her claim.

[¶ 20] Weir, unlike all of the other patients involved in this appeal, never had her implants removed, according to the OSA statement of material facts filed in January 2000. She filed her notice of claim on May 3, 1994. The OSA statement of material facts states that Weir received a letter from the FDA in 1989 warning of defects regarding the implants. She did not controvert the statement, and it is deemed admitted. Thus, she waited more than three years after learning of the dangers of the implants before filing her notice of claim.

[¶ 21] As we said in *Braun I,* the seven patients "learned of the risks associated with their implants more than three years before they filed their notices of claim," and their "breach of the duty to warn" claims were therefore no longer viable. 2003 ME 11, ¶ 29, 819 A.2d at 1027. The Superior Court correctly entered judgment against the seven patients.

The entry is:

Judgments affirmed.